Now you've got Judge Nelson on the monitor here so if you see a furtive motion over there it may mean that he wants to ask a question and be alert to that. I will do my best. Okay, gonna save some time? Yes, your honor, three minutes please. Is that a good level for the microphone? That's fine. Right here. Good morning. May it please the court. My name is Jessica Skelton and I represent the petitioner, Philogene Pierre-Joseph. I would like to reserve three minutes for rebuttal. The issue in this case is relocation. In determining that petitioner Joseph could relocate within Haiti, the Board of Immigration improperly applying the burden of proof to petitioner Joseph to prove that he could not relocate within Haiti, and second, by determining that substantial evidence supports relocation. Either error is sufficient for this court to grant the petition in this case. The facts of this case are undisputed. The Board assumed that petitioner Joseph was a credible witness and that he had proved past persecution. The record contains persuasive evidence of this past persecution. As a result of his political activities on behalf of the Lavalasse party, petitioner Joseph was shot at, his home was burned down, and a friend with whom he was staying was murdered. The government does not dispute that petitioner Joseph campaigned on behalf of the Lavalasse party in at least five locations throughout Haiti, and the government does not dispute that petitioner Joseph is at risk in every location where he campaigned. Additionally, the government concedes that the Haitian National Police remain corrupt, inefficient, and inadequate, and unable to efficiently respond to security situations. Now the immigration judge found your client not credible? That is correct. But the BIA assumed his credibility? That's correct. So for the purpose of this appeal, we assume that credibility? That's correct. That's the before this court, the sole issue for this court to determine is whether relocation is safe and reasonable, and whether the government properly met its burden of proof in establishing relocation. In the face of the compelling facts in this record, it is clear that the Board found that relocation is reasonable only by engaging in speculation and improperly applying the burden of proof in this case. And as a result, this court should grant the First, the Board improperly applied the burden of proof in this case. The Board assumed that petitioner Joseph was credible, and that he had met his burden of proof. Once an individual establishes, or that he had met his burden of proof of establishing past persecution. Once an individual establishes past persecution, the burden then shifts to the government to establish that relocation would be safe and reasonable. The government does not dispute this in fact meet the burden in this case. Where specifically counsel did the BIA shift the burden? Tell me the paragraph. That would be at AR 3. Okay. The Board says that it's unclear from the record whether the evidence rises to the level of past persecution, but that it would assume for the purposes of its decision that past persecution had been established. That's the first paragraph. Okay, where does it shift the burden on relocation? Well, it's our position that we, that the Board did not properly shift the burden. Are you referring to the sentence that begins at the top of that page? The question of who has the burden of proof on this issue is a close one? That's correct. And then the final sentence says, however, even assuming that the respondent did meet his burden of establishing past persecution on an enumerated ground, the record establishes by a preponderance of evidence that the respondent could internally relocate within Haiti to avoid future persecution. What I'm, I see that they, where the court has said that they, or the BIA said that the burden of proof is on this issue is a close one. I don't know why they thought it was a, the burden of proof was a close one, at least as a legal matter. Now, in the last sentence in that paragraph, it says it, it, it phrases the whole thing in sort of passive voice. So it's not clear, but it does say that the record establishes by preponderance that the respondent could internally relocate within Haiti. Now, what makes us think that the board has shifted the burden to your client to prove that he can relocate in Haiti? I think when you read the reasoning of the board's opinion, it's very clear that the board relied on purported deficiencies and the evidence presented by Petitioner Joseph rather than affirmative evidence presented by the government. So, for example, the board points to the fact that Petitioner Joseph did not establish that he was nationally known for his That's simply not a requirement that Petitioner Joseph must establish that he's nationally known in order to prove that he could relocate. That's the government's burden to establish that there is another location within Haiti that would be safe and reasonable for Petitioner Joseph to relocate to that location. Additionally, the board relies on evidence such as the fact that convergence party members did not seek Petitioner Joseph out when he was in hiding with his mother or in rural locations within Haiti. Again, it's not Petitioner Joseph's burden to establish that opposition members of the convergence party sought him out in locations. It's simply the government's burden to establish that there would be a location that Petitioner Joseph Would the government have to prove in a case like this? The government would have to prove that there's a location in Haiti that would be safe and reasonable for Petitioner Joseph to relocate to. Now, what do we do with the fact that Moise Jean is apparently living in the capital in Port-au-Prince? There is a declaration in the record from Magistrate Charles. And in that declaration, it states absolutely nothing about his safety in Port-au-Prince. It was simply a declaration that was faxed from Port-au-Prince. We can presume if you want to engage in speculation that Magistrate Charles might have resources at his disposal, there's no indication of whether or not he does have resources. There's no indication of any safety measures that Magistrate Charles may or may not have taken in order to protect his safety. That declaration is probative on one fact. And that was simply that Petitioner Joseph was at risk when he was within Haiti. Now, if we were to go, if the board had reached the question of Joseph Pierre's fear of persecution, a question on which he bears the burden of proof, then the declaration of Moise Jean Charles would be relevant, wouldn't it? As a failure of proof, a failure of your client's proof to show that he reasonably feared persecution, since the principal, in this case, that is the person that he was assisting, apparently is still living and living safely in Port-au-Prince. Again, it's unclear from that declaration that Magistrate Charles... Well, I agree. There's not much to it. But that is something on which your client would bear the burden if we were talking about whether he reasonably fears persecution in Haiti. If that were the issue before this Court, this Court could certainly look at the declaration to determine whether or not it was probative on that fact. But that's not the position that this case has come up before this Court. The board assumed that Petitioner Joseph had established past persecution for the purposes of its decision. Puts everybody in a little bit of an awkward position, though, when there's so little to the declaration that you can say, I win because the government fails because this declaration doesn't prove anything. On the other hand, if the burden were shifted back to a different question, that is the question of persecution, then it's hard for you to say, well, the declaration doesn't prove anything, therefore my client still prevails. Well, this is a situation where the government had a burden to produce affirmative evidence, and instead they relied on evidence provided by Petitioner Joseph. If the government had the ability to provide affirmative evidence that Petitioner Joseph would be safe at a location within Haiti, it certainly could have and should have done so. The government didn't do that in this case. It has not established that there is a location within Haiti that is both safe and reasonable, and that's the two-pronged test to determine whether or not there's a place within a country that an individual can relocate to. The government didn't establish that. The only evidence in the record that the government relies on for the safety prong is this declaration of magistrate trials, which, as we've discussed, is not probative on that issue. You wanted to save some time for rebuttal. Thank you, Your Honor. Judge Nelson, do you have any questions? No, I don't. Thank you. You've got about almost two minutes. Thank you for your argument. We'll hear from the Attorney General at this time. Ms. Clark. Good morning. May it please the Court. I'm Catherine Clark on behalf of the Attorney General. This petition for review should be denied because substantial evidence supports the agency's determination that petitioner who claimed to have suffered harm on account of his political opinion only in the local areas of Milo and Cap-i-Ten in Haiti could avoid persecution by relocating within Haiti in the future.  The part that your opponent referred to, and that's the sentence that begins the question of who has the burden of proof. Yes. There's, there's, there's no, that's just dead wrong, isn't it? The BIA, when it discussed. You start with a yes or no. Oh, I'm, I'm not sure I understand. That statement is wrong. Which. I mean, there's no question who has the burden of proof, right? I believe the BIA, when it was, when it was saying that the question of who has the burden of proof is a close one, was referring to, it would be close given that the question of past persecution is closed, but even considering, even assuming that past persecution were established. If that's a statement of law, it's incorrect, isn't it? It is not an incorrect, it is not an incorrect statement of law. Who has the burden of proof on safe internal relocation? The government in this case, because past persecution was assumed, has the burden of proof. However, if past persecution were not assumed in the case that past persecution is a close question. They assume the petitioner credible. They did. Yes. And they assumed past persecution, but until they assumed past persecution, if you assume credible testimony and you assume past persecution, as a matter of fact, under the CFRs, you begin with the presumption that the, the petitioner cannot safely relocate, correct? That is correct. Okay. So at that point, step one, two, three, step four is the government has the burden, correct? And that is correct. So if this is a statement of law, it's incorrect. It would be incorrect if it were a statement of law. However, it is, it is not a statement of law in this case. And in any case, the board then moved on to, to place the burden on the government. Even assuming that the respondent did meet his burden of, of past, of establishing past persecution on an enumerated ground, the record establishes by a preponderance of the evidence that respondent could internally relocate within Haiti. When the burden of proof is on the asylum applicant, the burden is to show that the applicant could not relocate within Haiti. It's the absence of the word not in that sentence that indicates that the burden is on the government under the board's, under the board's decision. And additionally, the board then goes on to cite evidence that the court has considered in cases where the burden is on the government. It is not simply affirmative evidence that the government introduces that is relevant in previous cases of the Ninth Circuit concerning whether internal relocation has been established by the government. The court looks to not only affirmative evidence. Yes, it does look to that, such as Department of State reports introduced by the court, but it also looks to, here, it also looks to the government's arguments on closing, in closing before the immigration judge, and to the cross-examination that the government conducts of the asylum applicant. Here, the, the board cited the immigration judge as affirmed by the board regarding internal relocation cited the background note which was submitted by the government in this case. So that's affirmative evidence submitted by the government to show that the Convergence Party was not listed among the national parties in Haiti that were listed in that document. We assume the petitioner's testimony to be credibly testified and also offered evidence that he had campaigned across Haiti during the elections, correct? And that was in 2004. The background note is dated June 2006, and thus, it was that document, the affirmatively introduced document by the government that the, that the agency looked to, to assess the relocation burden, that to assess the relocation evidence at the time of the agency decision. 2004 in Haiti was the last election before the hearing occurred before the IJ? Is that correct? The immigration judge hearing was... You know, it's real easy with my questions, or questions from the bench. If you can, start with a yes or no. Is it correct that at the time of the IJ hearing, the last nationwide Haitian election took place in 2004? That is incorrect. Okay. The election immediately preceding the IJ hearing was in February of 2006. And that was the election in which René Préval was elected. He was a former ally of Aristide, the Lavalas founder whom petitioner, whom petitioner was supporting in Haiti, and indeed he was, Préval was a co-founder of the Lavalas party along with Aristide. And he was the individual who was in power. Yes, petitioner's testimony is presumed credible on appeal, but petitioner also testified that he knew very little of events in Haiti at the time of his testimony. And for that reason, the Préval election was relevant to the government's ability to meet its burden of proof concerning internal relocation. Additionally, the board noted that, the board noted that petitioner was safe in Pitimi where he relocated for over half a year before leaving to, before leaving Haiti for the United States. And this information was revealed on cross-examination by the DHS concerning the safety of the magistrate, petitioner's former boss. The test, the argument concerning the magistrate came out on the DHS's closing argument. So that was introduced by the DHS as well. Those were the primary foundations for the board's decision regarding relocation. Therefore, the board, both the statement of the standard of proof, the preponderance of the evidence standard, and the absence of that word not, and then the subsequent evidence cited by the board indicates that the board was indeed putting the burden of proof on the, on the DHS as was proper, given the assumption of credibility and past persecution. Did the BIA refer to the fact that one of his homes was burned down in Carrefour-de-Pourrie? That is correct. Did they refer to that? I'm sorry, the immigration judge referred to that. I asked you if the BIA did. No, I apologize. And the... Did the BIA refer to the killing of his friend? The BIA did not, however... It's a pretty significant event, isn't it? The government would not deny that that event would be significant. However, the board was adding its comments to the immigration judge's extensive findings concerning internal relocation, and for that reason the board was not required to mention every single event that, even events that may have been significant. It's okay for them to mention those items which support the government's case but not the petitioner's? The board was considering multiple aspects of the case, not simply the... The board was considering the factors that... The board did not simply consider factors that supported the government's case. It simply concluded that the factors altogether enabled the government to meet its burden of proof. If you line these things up, one side and the other, would you not agree that the burning of the house and the killing of the friend would be among the most significant on the petitioner's side of the equation? With regard to... Would you or would you not agree to that? Not with regard to internal relocation, necessarily. The fact that a house he maintained in another part of Haiti was burned down, that doesn't enter the picture? Because the house was in... The house was in Carrefour, it did not... There was no... The board was not required, under the substantial evidence standard, to conclude that that was the determinative factor in this case. The board was... The evidence does not compel that conclusion, and that is the standard of review with respect to the determination. The board says, look, he spent seven months at Batimi, so he can go there. They then acknowledge that Pierre Charles said, yes, but this is very, very rural, there's no employment. And the board's answer is, the respondent, however, can relocate to a city if he desires. What city is he supposed to relocate to? The board does not name a city, however... He can't go to the city that he lived in originally, can he? He can't go to a couple of the other... We've got a couple of cities that we're going to be able to take off that list pretty quickly, right? Because we assume that he's credible, and therefore he was persecuted in a couple of cities. Under those assumptions, it is possible that he... This is a pretty unsatisfactory answer, that he can relocate to a city if he's fleeing from the city, and the only reason he was safe is because he was in an area that was so rural. The evidence does not compel the conclusion that Petitioner could not return, for example, to Port-au-Prince, where the board mentioned... That burden is not Mr. Charles' burden on this case. No, that is not Mr. Pierre's burden. But that is not Petitioner's burden. That is the government's burden. However, the government wrote... Pardon me. The government brought up the issue of Mr. Charles, the magistrate's location in Port-au-Prince. Now, what do we do with that declaration? I'm a little puzzled as to what to do with that, because it really is skeletal. And as I pointed out to counsel for Petitioner, when the Petitioner has the burden to show that he's going to be persecuted, this is pretty thin evidence and doesn't do a lot for his side. On the other hand, where the government bears the burden here, it's also hard to point to this and get very much out of that, because we just don't have a lot of detail. He is apparently living. We don't know whether he's living in hiding, whether he just applied this declaration surreptitiously and they sneaked it out of the country in order to support this asylum claim. It is not clear precisely how they obtained the declaration. However, the board was not compelled to conclude that, for example, the magistrate would not have mentioned if he felt that he were forced to go into hiding, that that wouldn't be important enough. The declaration was probably prepared with an idea to mentioning things that would be relevant to Joseph Pierre's burdens and probably not to the government's burdens. So it may well be that Magistrate Charles isn't drafting this with an idea of saying, oh, and by the way, I'm in hiding in Port-au-Prince, and I fear for my life every time I go out on the street. And given that the petitioner claims that he is part of the same party as Mr. Charles and that he worked for Mr. Charles and that all of his harm was suffered on account of his relationship with Mr. Charles, his employment relationship with Mr. Charles, it would seem to make sense for Mr. Charles to include in his declaration some mention of his own safety, as that presumably would be relevant to petitioner's safety in this case. And because there was no such mention, the board was not compelled to conclude that that declaration was irrelevant to petitioner's ability to relocate. And that is precisely what it did here. It falls a little short of being substantial evidence to support the government's position that Mr. Pierre Charles could relocate to Port-au-Prince. Even if it were to fall short of that on its own, the petitioner's testimony that he was safe in Pitimi and the election, the background note which indicates that a Lavalasse ally was elected president of Haiti in February of 2006 all of those together the board states come to meet the government's burden. The board even states that it is not the magistrate's declaration alone that it is relying on to come to its conclusion. Okay. We've taken you over your time. Judge Nelson, any questions? No questions. Okay. Thank you. Thank you for your argument. We appreciate you coming in today. Anything you're dying to tell us? Just briefly. The board committed a mistake of law when it applied the burden of proof in this case to Petitioner Joseph. In this court's decision in Mashiri v. Ashcroft, this court held that making such a mistake of law was sufficient grounds to grant a petition, and that's the situation that this court is faced with here. The counsel for the government stated that there is affirmative evidence in the record that conditions in Haiti have changed such that relocation would be safe now for Petitioner Joseph. First, that's not a ground on which the board held that relocation would be possible in this case, and that is not up for review by this court. Additionally, there is no evidence of what has occurred in Haiti in the last two years. It's simply not an issue that this court can determine. And thirdly, the evidence that is in the record supports the fact that Haiti is a country in turmoil and that the government has not disputed and, in fact, has conceded that the Haitian National Police are simply unable to control situations when they get out of control. As a result, Haiti simply isn't a safe or reasonable location for Petitioner Joseph to relocate, and we ask that this court grant the petition if there are no further questions. I don't see any. Thank you for your argument. And thanks to Kirkpatrick, Lockhart, Preston Gates for taking this on pro bono, I assume. Thank you very much. We appreciate your valuable time. Thanks to the government for coming in today. The case just argued will be submitted for decision, and we'll proceed to the next case on the argument calendar, which is Turner v. Hallberg. Counsel are present if they'd come forward, please.
judges: Nelson, Hawkins, Bybee